# EXHIBIT 3

Name of Offeree:   GB US Fintech Income Fund of Funds #1 _____   Copy No. _____
by Korea Securities Finance Corporation
(as trustee of "GB US Fintech Income Fund of Funds #1")

SUBSCRIPTION BOOKLET
INSTITUTIONAL INVESTORS

**Direct Lending Income Fund, L.P.**
A Delaware Limited Partnership

**Direct Lending Investments, LLC**
General Partner

This Subscription Booklet contains a Subscription Agreement and other investor documents for use only in connection with the private offering being made by Direct Lending Income Fund, L.P., a Delaware limited partnership (the "*Partnership*") to eligible investors pursuant to a Confidential Private Placement Memorandum dated December 2015 (the "*Memorandum*").  This Subscription Booklet must not be used if it is not accompanied by a copy of the Memorandum.  Nothing in this Subscription Booklet constitutes or shall be deemed to constitute an offer to sell or the solicitation of an offer to purchase securities.  Such an offer may be made only by means of the Memorandum and only to the person to whom such Memorandum is actually delivered.  References in this Subscription Booklet to any "investor" refers only to potential or prospective investors in the Partnership, and shall not constitute or be deemed to constitute any person as an investor in the Partnership, unless and until such person is specifically accepted as a Limited Partner in the Partnership.

Sharp v. Shinhan et al., Exhibit 3
GB001 Subscription, Page 2 of 17

**SUBSCRIPTION INSTRUCTIONS**
**Direct Lending Income Fund, L.P.**

All investors must complete and sign the following documents:

- the Investor Questionnaire (Section 1)
- the Subscription Agreement (Section 2)
- the Investor Signature Page, including the signature page for the Limited Partnership Agreement of the Partnership (Section 3)

All investors should keep a copy of the following documents for future use or reference:

- the Form of Request for Withdrawal (Appendix A)
- the Form of Request for Periodic Withdrawal (Appendix B)
- the Additional Subscription Request (Appendix C)

All investors should submit payment by Wire:

| | |
|---|---|
| Bank: | Northbrook Bank & Trust |
| Bank Address: | 1100 Waukegan Road |
| | Northbrook, IL 60062 |
| ABA No.: | 071926184 |
| Beneficiary: | Direct Lending Income Fund, L.P. |
| Beneficiary Account Number: | ▮▮▮▮▮▮ |
| FFC: | [Name of Subscriber] |

1. Please have your bank identify your name on the wire transfer.
2. The General Partner of the Partnership recommends that your bank charge its wiring fee separately so that the full amount you have elected to invest may be invested in the Partnership.

To comply with applicable anti-money laundering/OFAC rules and regulations, the Subscriber remitting payment is required to provide the following information:

**Payment Information**
Please provide the following information for the bank from which your payment to the Fund is being wired:

Wiring Bank Name:   KB Kookmin Bank

Bank Address:   Shinbanpo 11cha sanggan, 257 Shinbanpo-ro, Seocho-gu, Seoul, Korea

ABA Number:   CZNBKRSEXXX

Account Number:   ▮▮▮▮▮▮▮▮

Account Name:   Korea Securities Finance Corp (GBUSFINTECH#1)

FCC Account Name (optional):

FCC Account Number (optional):

YOU MUST WIRE THE PAYMENT FROM AN ACCOUNT IN YOUR NAME. **CLEARED FUNDS MUST BE IN THE PARTNERSHIP'S ACCOUNT AT LEAST TEN (10) BUSINESS DAYS PRIOR TO THE DATE ON WHICH THE INVESTOR IS ADMITTED TO THE PARTNERSHIP.** IF FUNDS ARE TO BE WIRED FROM A BROKERAGE ACCOUNT, PLEASE PUT THE BROKERAGE ACCOUNT NUMBER AND NAME IN THE FFC FIELDS.  THE COMPLETED SUBSCRIPTION BOOKLET SHOULD BE RETURNED IN ITS ENTIRETY.  UPON YOUR ACCEPTANCE BY THE GENERAL PARTNER AS AN INVESTOR IN DIRECT LENDING INCOME FUND, L.P., YOU WILL BE FORWARDED COPIES OF ALL EXECUTED DOCUMENTS.  PLEASE PRINT AND SIGN IN BLUE OR BLACK INK AND/OR TYPE ALL INFORMATION.

Sharp v. Shinhan et al., Exhibit 3
GB001 Subscription, Page 3 of 17

## SECTION 1 – INVESTOR QUESTIONNAIRE

---

### Direct Lending Income Fund, L.P.

---

ALL INFORMATION FURNISHED IS FOR THE SOLE USE OF DIRECT LENDING INVESTMENTS, LLC AND ITS COUNSEL FOR PURPOSES OF DETERMINING THE ELIGIBILITY OF THE INVESTOR TO PURCHASE AN INTEREST IN THE PARTNERSHIP. THIS QUESTIONNAIRE WILL BE HELD IN CONFIDENCE BY THE PARTNERSHIP AND ITS COUNSEL, EXCEPT THAT THIS QUESTIONNAIRE MAY BE FURNISHED TO SUCH PARTIES AS THE PARTNERSHIP AND ITS COUNSEL DEEM NECESSARY TO ESTABLISH COMPLIANCE WITH FEDERAL OR STATE SECURITIES LAWS OR TO THE EXTENT REQUIRED BY LAW.

The Partnership Interests being offered by the Partnership are not registered under the Securities Act of 1933, as amended (the "*Securities Act*"), in reliance upon certain exemptions from registration provided by the Securities Act.  In order to obtain the facts needed to determine whether the Partnership may accept an investor's investment, it is necessary for the investor (the "*Investor*") to complete this Investor Questionnaire.  Accordingly, the undersigned represents and warrants to the Partnership that (i) the information contained herein is complete and accurate and (ii) the undersigned will notify the General Partner immediately of any change of any such information occurring at any time in which the undersigned is a Limited Partner and, that absent such notification, the information contained herein will be deemed complete and accurate. The questionnaire should be signed, dated and forwarded to the Partnership.

Sharp v. Shinhan et al., Exhibit 3
GB001 Subscription, Page 4 of 17

\* \* \* \* \* \* \* \* \* \* \*

Answer all questions.  Write "N/A" if not applicable.

\* \* \* \* \* \* \* \* \* \* \*

**A.  INVESTOR INFORMATION**

1.  (a)  Name of Investor:  <u>GB US Fintech Income Fund of Funds #1 by Korea Securities Finance</u> Corporation <u>(as trustee of "GB US Fintech Income Fund of Funds #1")</u>

(Full Legal Name)

(b)  Please indicate type of ownership:

- [ ] Grantor of a revocable trust
- [ ] Corporation
- [ ] Partnership
- [ ] Limited Liability Company
- [x] Trust or Foundation
- [ ] Employee Benefit Plan (as defined in ERISA)

(c)  Name of individual(s) making the investment decision on behalf of the entity:

<u>JB Asset Management</u>

2.  General Information

Full Legal Name of Purchaser:  <u>GB US Fintech Income Fund of Funds #1 by Korea Securities Finance Corporation (as trustee of "GB US Fintech Income Fund of Funds #1")</u>

State in which formed:  <u>Seoul, Republic of Korea</u>     Date formed: _____

SSN/TIN: _____

Principal Business:  <u>Trustee and Custodian Service</u>

Principal Place of Business\*:  <u>10, Gookjaegeumyoong-ro 8-gil</u>

(Number and Street) *Tax purposes only. No docs will be mailed.*

<u>Yeongdeungpo-gu, Seoul, 07330, Republic of Korea</u>

(City)                    (State)        (Zip Code)      (County)

Name of Authorized Representative/Agent:  <u>Ko, Nosung</u>

Telephone: ▮▮▮▮▮▮▮▮     E-mail address : ▮▮▮▮▮▮▮▮▮▮▮▮

3.  Please CC the following people on email communication:

Name:  <u>Kim, Hyoung wuk</u>

Telephone: ▮▮▮▮▮▮▮     E-mail address: ▮▮▮▮ @gbam.co.kr

Relationship to Investor: _____

Sharp v. Shinhan et al., Exhibit 3
GB001 Subscription, Page 5 of 17

B.   **ERISA STATUS**

1.   The undersigned is a corporation, partnership, trust or other entity, and 25% or more of the value of any class of equity interests of the undersigned is held by employee benefit plans within the meaning of Title I of the Employee Retirement Income Security Act of 1974 ("**ERISA**") (including plans maintained outside the United States ("**Employee Benefit Plans**") subject to ERISA).

☐ True          ☑ False

**Only answer Questions 2 and 3 if the undersigned is an Accredited Investor as a result of its status as an Employee Benefit Plan (see question C(7) below):**

2.   The undersigned certifies that it is a "defined benefit plan" (as defined in Section 3(35) of ERISA) which is not described in Section 4(b)(1), 4(b)(2) or 4(b)(4) of ERISA.

☐ True          ☐ False

3.   The undersigned certifies that it is an involuntary, noncontributory defined benefit plan as defined in the Securities and Exchange Release Nos. 33-6188 and 33-6218.

☐ True          ☐ False

C.   **ACCREDITED INVESTOR STATUS**

As one of the qualifications of being an accredited investor, the undersigned has the financial ability to bear the economic risk of the undersigned's investment and has adequate means for providing for the undersigned's current needs and possible personal and other contingencies. Please indicate by ticking one or more of the following categories which are applicable to you.  If no category is applicable, please check Number 9, "None."

***Trusts, Partnerships, Companies and Other Entities:***

☐   1.   Any organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "**Code**"), corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

☐   2.   Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) under the Securities Act;

☐   3.   A private business development company as defined in Section 202(a)(22) of the Advisers Act;

Sharp v. Shinhan et al., Exhibit 3
GB001 Subscription, Page 6 of 17

*Financial Institutions:*

☐   4.   Any bank as defined in Section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act; any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended;

☐   5.   Any insurance company as defined in Section 2(13) of the Securities Act; any investment company registered under the Investment Company Act or Business Development Company as defined in Section 2(a)(48) of that Act;

☐   6.   Any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

*Benefit Plans:*

☐   7.   Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; or any employee benefit plan within the meaning of ERISA, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by natural persons that would themselves qualify as eligible investors. Subject to the sole discretion of the General Partner, no eligible investor falling within the foregoing categories will be admitted to the Partnership unless, if the investor is subject to ERISA, such investment, taken together with those of all other Beneficial Owners subject to ERISA, does not amount to 25% or more of all Partnership Interests;

*Other:*

☑   8.   Any entity in which all of the equity owners are accredited investors; or

☐   9.   None.

Sharp v. Shinhan et al., Exhibit 3
GB001 Subscription, Page 7 of 17

**D.      INVESTMENT COMPANY AND "FLOW-THROUGH ENTITY" STATUS**

On both the date hereof and the date on which the undersigned is admitted as a Limited Partner of the Partnership (after giving effect to the undersigned's acquisition of its Partnership Interest and the funding of all of its initial capital contribution), the undersigned is not and will not be either:

  1.      an "investment company" as that term is defined in Section 3(a) of the Investment Company Act; or

  2.      excluded from the definition of an "investment company" by the exceptions provided for in Section 3(c)(1) or 3(c)(7) of the Investment Company Act.

              ☑    True              ☐    False *

              * Note: If the answer is false, the General Partner may require additional information regarding the undersigned and possibly its investors.

If (a) the beneficial owner of the Partnership Interest is to be a grantor trust, an S corporation, or a partnership ("***Flow-through Entity***") and (b) the Flow-through Entity's investment in the Partnership represents greater than 40% of the value of the Flow-through Entity's total assets, then the Flow-through Entity represents that the number of beneficial owners that currently hold ownership interests in the Flow-through Entity is as follows: _____, and the Flow-through Entity hereby undertakes to promptly notify the Partnership of the amount of any change in such number.

**E.      ELECTRONIC DELIVERY NOTIFICATION**

The Partnership will send reports, notices and other communications in electronic form, such as E-mail or by posting on a web site (with notification of the posting by E-mail).  This information includes any monthly, quarterly, annual and other updates regarding the Partnership including any changes or amendments. Should you require a printed hardcopy of any information related to the Partnership, please contact the Administrator.

[END OF QUESTIONNAIRE]

## SECTION 2 – SUBSCRIPTION AGREEMENT

Direct Lending Investments, LLC
General Partner, Direct Lending Income Fund, L.P.
355 S Grand Ave, Suite 2450
Los Angeles, CA 90071

Gentlemen:

The undersigned investor hereby subscribes for a Class A partnership interest (the "***Partnership Interest***") in Direct Lending Income Fund, L.P., a Delaware limited partnership (the "***Partnership***") upon the terms and conditions set forth herein, in the Partnership's Confidential Private Placement Memorandum dated December 2015 (the "***Memorandum***") and the Partnership's Fifth Amended and Restated Limited Partnership Agreement dated December 1, 2015 (as the same may be amended, supplemented or revised from time to time, the "***Partnership Agreement***"), as such documents may be amended from time to time.  The undersigned investor agrees to make the following capital contribution to the Partnership:

$ __6,465,000.00__

Capitalized terms used and not defined herein shall have the meaning assigned to such terms in the Partnership Agreement.  This subscription agreement (the "***Subscription Agreement***") shall become effective and binding upon the acceptance hereof by the Partnership.

1.  <u>**Representations and Warranties.**</u>  In connection with the purchase of the Partnership Interest, the undersigned hereby represents and warrants to the Partnership and Direct Lending Investments, LLC, as General Partner of the Partnership, that:

    (a)  The Partnership Interest is being purchased for the undersigned's own account without the participation of any other person, with the intent of holding the Partnership Interest for investment and without the intent of participating, directly or indirectly, in a distribution of the Partnership Interests and not with a view to, or for resale in connection with, any distribution of the Partnership Interests, nor is the undersigned aware of the existence of any distribution of the Partnership's securities.

    (b)  The undersigned has evaluated the risk of investing in the Partnership and is acquiring the Partnership Interest based only upon its independent examination and judgment as to the prospects of the Partnership as determined from information obtained directly by the undersigned from the Partnership or its authorized representatives.

    (c)  The Partnership Interest was not offered to the undersigned by means of publicly disseminated advertisements or sales literature, nor is the undersigned aware of any offers made to other persons by such means.

    (d)  The undersigned's overall commitment to investments which are not readily marketable is not disproportional to the undersigned's net worth, and the undersigned's acquisition of the Partnership Interest will not cause such overall commitment to become excessive.

    (e)  The Partnership is an investment that involves a high degree of risk and the undersigned can sustain a substantial loss of this investment in the Partnership.  The undersigned is willing to

Sharp v. Shinhan et al., Exhibit 3
GB001 Subscription, Page 9 of 17

bear the economic risk of investment in the Partnership Interest for the period of time stipulated in the withdrawal provisions of the Partnership Agreement.

(f)   The address set forth on the signature page hereto is the undersigned's true and correct address.

(g)   If the Investor is or would be an investment company as defined by the Investment Company Act, the Investor represents that but for the exceptions contained in Section 3(c)(1) or Section 3(c)(7) of that Act, it recognizes that the Partnership is restricted by law as to the number of beneficial owners of the Partnership, and, that in determining the number of beneficial owners, it may be necessary to count the beneficial owners of the Investor if its Partnership Interest is greater than 10% of the outstanding Partnership Interests held by all Limited Partners.  Accordingly, the Investor agrees to take whatever action is requested by the Partnership to ensure that its Partnership Interest represents less than 10% of the total Partnership Interests held by all Limited Partners and expressly agrees that the General Partner may require the Investor to withdraw at any time so much of its Capital Account as is necessary to keep such Partnership Interest below 10%.

(h)   The execution and delivery of this Subscription Agreement by the undersigned has been duly authorized, and this Subscription Agreement constitutes the valid and binding agreement of the undersigned enforceable against the undersigned in accordance with its terms.

(i)   No provision of any applicable law, regulation, or document by which the undersigned is bound prohibits the purchase of the Partnership Interest by the undersigned.

(j)   Further Representations and Warranties by Investors Subject to ERISA.

  (i)   If the undersigned is a pension plan or retirement fund, no individual or employer participating directly or indirectly in the plan or the fund (collectively, the "**Plan**"), <u>acting in his or its capacity as an individual or employer</u> (*recognizing that with respect to roll-over and similar accounts, the sole beneficiary may be acting in the capacity of Plan Investment Fiduciary, as defined below*), can direct the investments of the Plan (or any pension plan participating in the Plan); the initial decision to invest assets of the Plan in the Partnership has been made, and the decision to make subsequent investments of assets of the Plan in the Partnership will be made, by a fiduciary of the Plan (unrelated to the General Partner) (the "**Plan Investment Fiduciary**") acting in the exercise of its sole discretion to make such investment decisions, and such fiduciary has the authority and may, in its sole discretion, subsequently determine to withdraw such investment from the Partnership and to invest such assets elsewhere; the decision to invest assets of the Plan in the Partnership was not, and any subsequent decision to withdraw assets from the Partnership will not be, made pursuant to the direction of any individual or individuals participating in the Plan, and no individual or individuals participating in the Plan will determine whether or how much of their assets will be invested in the Partnership; neither the employer nor any other person associated with the Plan shall have, or attempt to exercise, the power to influence or control the appointment or removal of the General Partner, or any successor to any such person, the terms of the Partnership Agreement, the investment objectives, policies or restrictions of the Partnership, and the investment or management decisions regarding the Partnership; and neither the employer nor any other person associated with the Plan has made or will make any representation to individuals participating in the Plan that all or any specific portion of their contributions will be invested in the Partnership.  The

Sharp v. Shinhan et al., Exhibit 3
GB001 Subscription, Page 10 of 17

undersigned acknowledges that it understands (and the General Partner agrees) that neither the General Partner nor any person acting on behalf of the Partnership or the General Partner will have any direct contact with individuals as such participating in the Plan regarding investment of contributions to the Plan.

(ii)  All of the types of investments to be made by the Partnership as described in the Memorandum are permitted under the terms of the Plan.

(iii)  The undersigned is a named fiduciary, within the meaning of Section 402(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), of such Plan, and in accordance with Section 403 of ERISA, at least one signatory for the Plan hereunder is a "trustee" or "investment manager" of the Plan as defined in ERISA.

(iv)  If the undersigned is an employee benefit plan or related partnership qualified under Section 401(a) or 501(a) of the Internal Revenue Code of 1986, as amended (the "*Code*"), respectively, the person executing this Subscription Agreement on behalf of the undersigned represents that he or she and the Plan Investment Fiduciary have been informed of and understand the Partnership's investment objectives, policies and strategies and that the decision to invest in the Partnership is consistent with the provisions of the Code, ERISA, and the governing documents of the Plan and that he or she has the authority to execute this Subscription Agreement on behalf of the undersigned.

(v)  The undersigned and/or the Plan Investment Fiduciary will provide to the General Partner upon acceptance of this Subscription Agreement and from time-to-time thereafter upon reasonable notice a list of the parties in interest, as defined in ERISA Section 3(14), of the Plan.

(k)  The Investor understands and agrees that the Partnership prohibits the investment of funds by any persons or entities that are acting, directly or indirectly, (i) in contravention of any U.S. or international laws and regulations, including anti-money laundering regulations or conventions, (ii) on behalf of terrorists or terrorist organizations, including those persons or entities that are included on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Treasury Department's Office of Foreign Assets Control[1] ("*OFAC*"), as such list may be amended from time to time, (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure[2], unless the General Partner, after being specifically notified by the Investor in writing that it is such a person, conducts further due diligence, and

---

[1]  The OFAC list may be accessed on the web at http://www.treas.gov/ofac.
[2]  Senior foreign political figure means a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation. In addition, a senior foreign political figure includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure. The immediate family of a senior foreign political figure typically includes the political figure's parents, siblings, spouse, children and in-laws. A close associate of a senior foreign political figure is a person who is widely and publicly known internationally to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure.

Sharp v. Shinhan et al., Exhibit 3
GB001 Subscription, Page 11 of 17

determines that such investment shall be permitted, or (iv) for a foreign shell bank[3] (such persons or entities in (i) – (iv) are collectively referred to as ***Prohibited Persons***").

(l)   If the Investor is a pension plan, IRA or other tax-exempt entity, it represents that it is aware that it may be subject to Federal income tax on any unrelated business taxable income from its investment in the Partnership.

(m)   If the Investor is a corporation, the Investor is duly and validly organized, validly existing and in good tax and corporate standing as a corporation under the laws of the jurisdiction of its incorporation with full power and authority to purchase the Partnership Interest and to execute and deliver this Subscription Agreement, and the Investor agrees to furnish to the General Partner, upon request, documentation satisfactory to the General Partner in the General Partner's reasonable discretion, evidencing such organization, existence, standing, power and authority.

(n)   If the Investor is a partnership or limited liability company, the representations, warranties, agreements and understandings set forth herein are true with respect to all partners or members in the Investor (and if any such partner or member is itself a partnership or limited liability company, all persons holding an interest in such partnership or limited liability company, directly or indirectly, including through one or  more partnerships or limited liability companies), and the person executing this Subscription Agreement has made due inquiry to determine the truthfulness of the representations and warranties made hereby, and the Investor agrees to furnish to the General Partner, upon request, documentation satisfactory to the General Partner in the General Partner's reasonable discretion, supporting the truthfulness of such representations and warranties with respect to all such partners or members in the Investor.

(o)   If the Investor is purchasing in a representative or fiduciary capacity, the representations and warranties herein shall be deemed to have been made on behalf of the person or persons for whom the Investor is so purchasing, and the Investor agrees to furnish to the General Partner, upon request, documentation satisfactory to the General Partner in the General Partner's sole discretion, supporting the truthfulness of such representations and warranties as made on behalf of such person or persons.

(p)   All of the information provided by the Investor in the Investor Questionnaire and all of the representations, warranties and agreements set forth in this Subscription Agreement are true and accurate as of the date hereof and contain no omissions of material fact.  Should the foregoing statement cease to be true in any respect, the undersigned will promptly notify the Partnership.

---

[3]   Foreign shell bank means a foreign bank without a physical presence in any country, but does not include a regulated affiliate.  A post office box or electronic address would not be considered a physical presence.  A regulated affiliate means a foreign shell bank that: (1) is an affiliate of a depository institution, credit union, or foreign bank that maintains a physical presence in the United States or a foreign country, as applicable; and (2) is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or foreign bank.

Sharp v. Shinhan et al., Exhibit 3
GB001 Subscription, Page 12 of 17

2.   **Acknowledgments.**  The undersigned acknowledges:

(a)   Receipt of all information requested of the Partnership, and further acknowledges that no representations or warranties have been made to the undersigned by the Partnership, the General Partner or any representative or agent of the Partnership, other than as set forth in the Memorandum and the Partnership Agreement.

(b)   That the undersigned must continue to bear the economic risk of the investment in the Partnership for the period of time stipulated in the withdrawal provisions of the Partnership Agreement and recognizes that the Partnership Interests are being: (i) sold without registration of securities for sale; (ii) issued and sold in reliance on exemptions from registration under applicable state securities laws; and (iii) issued and sold in reliance on certain exemptions from registration, including Regulation D, under the Securities Act of 1933, as amended (the "*Securities Act*").

(c)   That this subscription may be accepted or rejected in whole or in part in the sole discretion of the General Partner.

(d)   That the undersigned is aware that the Partnership Interest may only be transferred with the General Partner's prior consent, which may be withheld in the General Partner's sole discretion, under the Partnership Agreement.

(e)   That the undersigned has received and carefully read and is familiar with the Partnership Agreement and the Memorandum.

(f)   The undersigned is purchasing the Partnership Interest relying only on the information set forth in the Partnership Agreement and Memorandum.

(g)   That there is not currently, nor is there expected to arise, any public market for the Partnership Interests, and the undersigned may have to hold the Partnership Interest indefinitely, and it may not be possible for the undersigned to liquidate its investment in the Partnership Interests other than by withdrawal as provided in the Partnership Agreement.

(h)   That the undersigned understands that the Limited Partners have no right to amend or terminate the Partnership Agreement or to appoint, select, vote for or remove the General Partner or its agents or to otherwise participate in the business decisions of the Partnership.

(i)   That pursuant to the Partnership Agreement, the General Partner will exercise all rights, powers and privileges of ownership in all Partnership property, including the right to vote, give assent, execute and deliver proxies, and that the Partnership's proxy voting policies override the undersigned's proxy voting policies.  The undersigned hereby adopts the voting policies of the Partnership for purposes of its investment in the Partnership.

(j)   The Investor recognizes that non-public information concerning the Investor set forth in this Subscription Agreement or otherwise disclosed by the Investor to the Partnership, or other agents of the Partnership (the "*Information*") (such as the Investor's name, address, social security number, assets and income) may be disclosed (i) to the Partnership's General Partner, attorneys, accountants, prime broker, distributor, auditor, and third party administrators in furtherance of the Partnership's business and (ii) as otherwise required by law.  The Partnership and General Partner restrict access to the Information to their employees who need to know the information to provide services to the Partnership, and maintain physical, electronic and procedural safeguards that comply with U.S. federal standards to guard the information.

Sharp v. Shinhan et al., Exhibit 3
GB001 Subscription, Page 13 of 17

(k)   If any of the foregoing representations, warranties or covenants ceases to be true or if the Partnership no longer reasonably believes that it has satisfactory evidence as to their truth, notwithstanding any other agreement to the contrary, the Partnership may be obligated to freeze the Investor's investment, either by prohibiting additional investments, declining or suspending any withdrawal requests and/or segregating the assets constituting the investment in accordance with applicable regulations, or the Investor's investment may immediately be involuntarily withdrawn by the Partnership, and the Partnership may also be required to report such action and to disclose the Investor's identity to OFAC or other authority.  In the event that the Partnership is required to take any of the foregoing actions, the Investor understands and agrees that it shall have no claim against the Partnership, the General Partner and their respective affiliates, directors, members, partners, shareholders, officers, employees and agents for any form of damages as a result of any of the aforementioned actions.

(l)   The discussion of the tax consequences arising from investment in the Partnership set forth in the Memorandum is general in nature, may not address the tax consequences specific to the Investor and does not address all of the tax issues that may arise. The tax consequences to the undersigned of the investment in the Partnership will depend on the undersigned's particular circumstances.

(m)   The Investor should not construe the contents of the Memorandum, or any prior or subsequent communication from the General Partner or any of its respective agents, officers or representatives, as legal or tax advice. The Investor should consult his, her or its own advisors as to legal and tax matters concerning an investment in the Partnership.

(n)   If the Investor is a pension plan, IRA or other tax-exempt entity, it represents that it is aware that it may be subject to Federal income tax on any unrelated business taxable income from its investment in the Partnership.

(o)   That the undersigned has received and reviewed the Partnership's Privacy Notice, attached to the Memorandum.

(p)   That the General Partner is relying on the information provided in the Investor Questionnaire and the agreements, representations and warranties set forth in this Subscription Agreement by the Investor as a basis for the Partnership's eligibility to rely on certain exemptions from registration requirements discussed in the Memorandum.

3.   **Agreements.**  The undersigned hereby agrees as follows:

(a)   If the undersigned's purchase of the Partnership Interest is accepted by the General Partner, the undersigned Investor shall become a Limited Partner and in connection therewith, the undersigned shall adopt and be bound by all the terms and provisions of the Partnership Agreement, and any amendments thereto, including the prohibition on transfers of the Partnership Interest, and will perform all obligations therein imposed upon the undersigned with the respect to the undersigned's Partnership Interest.

(b)   The Partnership Interest will not be offered for sale, sold or transferred other than in accordance with the Partnership Agreement and pursuant to: (i) an effective registration under the Securities Act or in a transaction which is otherwise in compliance with the Securities Act; and (ii) evidence satisfactory to the Partnership of compliance with the applicable securities laws of other jurisdictions.  The Partnership shall be entitled to rely upon an opinion of counsel satisfactory to it with respect to compliance with the above laws and may, if it so desires, refuse to permit the transfer of the Partnership Interest unless the

Sharp v. Shinhan et al., Exhibit 3
GB001 Subscription, Page 14 of 17

request for the transfer is accompanied by an opinion of counsel acceptable to the Partnership to the effect that neither the sale nor the proposed transfer will result in any violation of the Securities Act or the securities laws of any other jurisdiction.

(c)   A legend indicating that the Partnership Interest has not been registered under such laws and referring to the restrictions on transferability and sale of the Partnership Interest may be placed on any certificate(s) or other document delivered to the undersigned or any substitute therefore and the General Partner of the Partnership or any transfer agent may be instructed to require compliance therewith.

(d)   The undersigned hereby agrees that any representation made hereunder will be deemed to be reaffirmed by the undersigned at any time the undersigned makes an additional capital contribution to the Partnership and the act of making such additional contribution will be evidence of such reaffirmation.

4.   **Indemnification.**   The undersigned understands the meaning and legal consequences of the representations, warranties and other agreements made by the undersigned herein, and that the Partnership and General Partner are relying on such representations and warranties in making their determination to accept or reject this subscription.   The undersigned hereby agrees to indemnify and hold harmless the Partnership, the General Partner, and any agent, director, officer or employee thereof from and against any and all loss, damage or liability due to or arising out of a breach of any representation, warranty or agreement of the undersigned contained in this Subscription Agreement.   The federal and state securities laws impose liabilities under certain circumstances on persons who act in good faith; nothing in this Subscription Agreement shall constitute a waiver or limitation of any rights which the undersigned may have under applicable federal and state securities laws.   If the undersigned is a Plan, this indemnification obligation in this Section 4 applies to the Plan's sponsor.

5.   **Effective Date of Contribution.**   The undersigned shall become a Limited Partner in the Partnership as of a given date only to the extent that the General Partner receives immediately available funds attributable to such contribution on such date and such funds are actually credited to the Partnership.

6.   **Governing Law.**   This Subscription Agreement and all amendments hereto shall be governed by and construed in accordance with the laws of the State of California and, together with the rights and obligations of the parties hereunder, shall be construed under and governed by the laws of such state without giving effect to any choice or conflict of law provisions or rules that would cause the application of the domestic substantive laws of any other jurisdiction.

7.   **Signature and Confirmation.**   The agreements and representations made by the undersigned herein extend to and apply to all of the capital contributions now or hereafter made to the Partnership by the undersigned.   The signature by the undersigned shall constitute a confirmation by the undersigned that all agreements, representations and warranties made herein shall be true and correct as of the date hereof.   If the undersigned is a Plan, the signature of its sponsor represents the sponsor's obligation to be bound by the provisions of Section 4 hereof.

*[Signatures on following page.]*

DocuSign Envelope ID: 59E0551E-56C3-4626-B904-CCDEA6E579AD

## SECTION 3 – INVESTOR SIGNATURE PAGE

**For Investors other than Individuals:**      **For Plan Investors:**

GB US Fintech Income Fund of Funds #1 by Korea Securities Finance Corporation
(as trustee of "GB US Fintech Income Fund of Funds #1")

| Legal Name of Investor | Name of Trustee or Investment Manager |
|---|---|

Korea Securities Finance Corp.
10, Gukjegeumyung-ro 8-gil
Yeongdeungpo-gu, Seoul, Korea

| Authorized Signature | Name of Plan Sponsor |
|---|---|

By: _____      By: _____

Title: _____      Print Name: _____

Authorized Signature

By: _____

Title: _____

**THE PARTNERSHIP INTERESTS REFERRED TO IN THIS SUBSCRIPTION AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT, OR UNDER APPLICABLE STATE SECURITIES LAWS. SUCH PARTNERSHIP INTERESTS ARE BEING OFFERED AND SOLD UNDER EXEMPTIONS FROM REGISTRATION PROVIDED BY SECTIONS 4(2) AND 3(b) OF THE SECURITIES ACT AND REGULATION D PROMULGATED THEREUNDER. ACCORDINGLY, THE PARTNERSHIP INTERESTS CANNOT BE RESOLD OR TRANSFERRED BY ANY INVESTOR WITHOUT REGISTRATION OF THE SECURITIES UNDER THE SECURITIES ACT AND APPLICABLE STATE LAWS, OR IN A TRANSACTION WHICH IS EXEMPT FROM SUCH LAWS.**

ACCEPTED on the __1__ day of __August__ , 20 16 .

Direct Lending Income Fund, L.P.

By:     Direct Lending Investments, LLC
       General Partner

DocuSigned by:
*Brendan Ross*
By: _____
F700C0BDD962434...
Name: Brendan Ross
Title: Managing Member

**INVESTOR SIGNATURE PAGE (Continued)**

DIRECT LENDING INCOME FUND, L.P.
LIMITED PARTNERSHIP AGREEMENT

IN  WITNESS  WHEREOF,  the  undersigned  has  executed  this  Agreement  as  of  the  25th day  of
July , 20 16 .

| **For Investors other than Individuals:** | **For Plan Investors:** |
|---|---|
| GB US Fintech Income Fund of Funds #1 by Korea Securities Finance Corporation (as trustee of "GB US Fintech Income Fund of Funds #1") | |
| Legal Name of Investor | Name of Trustee or Investment Manager |

Korea Securities Finance Corp.
10, Gukjegeumyung-ro 8-gil
Yeongdeungpo-gu, Seoul, Korea

| Authorized Signature | Name of Plan Sponsor |
|---|---|
| By: _____ | By: _____ |
| Title: _____ | Print Name: _____ |

Authorized Signature

By: _____

Title: _____

THE  PARTNERSHIP  INTERESTS  HAVE  NOT  BEEN  REGISTERED  UNDER  THE  SECURITIES  ACT,  OR  UNDER  APPLICABLE  STATE
SECURITIES  LAWS.  SUCH  PARTNERSHIP  INTERESTS  ARE  BEING  OFFERED  AND  SOLD  UNDER  EXEMPTIONS  FROM  REGISTRATION
PROVIDED  BY  SECTIONS  4(2)  AND  3(b)  OF  THE  SECURITIES  ACT  AND  REGULATION  D  PROMULGATED  THEREUNDER.
ACCORDINGLY,  THE  PARTNERSHIP  INTERESTS  CANNOT  BE  RESOLD  OR  TRANSFERRED  BY  ANY  INVESTOR  WITHOUT
REGISTRATION  OF  THE  SECURITIES  UNDER  THE  SECURITIES  ACT  AND  APPLICABLE  STATE  LAWS,  OR  IN  A  TRANSACTION  WHICH  IS
EXEMPT  FROM  SUCH  LAWS.